IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–03086–WJM–KMT

ANTHONY D. SHAPIRO,

      Plaintiff,

v.

WARDEN JAMES FALK, individually, and in his official capacity as Warden of the Sterling
Correctional Facility,
MAJOR RAYMOND BILDERAYA, individually, and in his official capacity as Major of
Custody and Control of the Sterling Correctional Facility,
LIEUTENANT STEVEN WEEDER, individually, and in his official capacity as Lieutenant of
Intake and Receiving of the Sterling Correctional Facility,
SERGEANT MARCUS RYNEK, individually, and in his official capacity as Sergeant of Intake
and Receiving of the Sterling Correctional Facility, and
UNIDENTIFIED NORTHERN TRANSPORT UNIT CORRECTIONAL OFFICERS 1
THROUGH 20, individually, and in their official capacities as Transport Officers for the
Colorado Department of Corrections,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on Defendants Falk, Bilderaya, and Rynek's[1]

(hereinafter "Defendants") "Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6)."  (Doc. No. 16, filed Feb. 3, 2014.)  For the following reasons, the court

---

[1] Defendant Weeder has not been served with process. Therefore, the court does not address
Plaintiff's allegations against Defendant Weeder herein.  The court will issue a separate Order to
Show Cause regarding Plaintiff's failure to serve Defendant Weeder.

RECOMMENDS that Defendants' Motion to Dismiss be GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Prisoner Complaint (Doc. No. 6, filed Nov. 25, 2013) and are presumed to be true for purposes of this Recommendation.  Plaintiff is an inmate in the custody of the Colorado Department of Corrections (CDOC) and is currently confined at Sterling Correctional Facility (SCF).  (Am. Compl. at 4, ¶ 1.)

On December 6, 2012, Plaintiff was called to the SCF Receiving Unit in order to place his property in storage before being transported to court.  (*Id.* ¶ 2.)  After having his picture taken, Plaintiff was placed in a holding cell with approximately ten other inmates.  (*Id.* ¶ 6.)

Sometime later, a prison official Plaintiff believes was Defendant Rynek came through the holding cell door and instructed all the inmates to "Drop them!" (*Id.* ¶ 10.)  Defendant Rynek proceeded to conduct a strip search of all inmates, including Plaintiff.  (*See id.* ¶ 12.)  Plaintiff was forced to lift up his arms and put his fingers in his mouth to show he was not concealing anything orally.  (*Id.* at 5, ¶ 17.)  Plaintiff was then forced to separate his penis from his scrotum and then lift up his scrotum.  (*Id.* ¶ 18.)  Plaintiff was then directed to turn around and lift both his feet so that the officer could inspect whether Plaintiff was concealing contraband in between his toes or on the bottom of his feet.  (*Id.* ¶ 19.)  Finally, Plaintiff was told to bend over, spread his buttocks with his hands, and squat and cough.  (*Id.* ¶ 20.)

Plaintiff feels ashamed of his body because, in his adolescent, he was diagnosed with non-Hodgkins lymphoma.  (*Id.* ¶ 14.)  He received significant scars from the surgery to remove cancerous tissue and from a reaction to his chemotherapy.  (*Id.*)  In addition, Plaintiff has large

scars on his abdomen from a surgery to remove his spleen.  (*Id.* ¶ 15.)  Finally, Plaintiff

maintains that his chest is deformed, such that it appears that he has female breasts.  (*Id.* ¶ 16.)

## PROCEDURAL HISTORY

Plaintiff's Amended Complaint, filed November 25, 2013, asserts a single claim pursuant

to 42 U.S.C. § 1983 for violations of his Fourth Amendment right to be free from unreasonable

searches and seizures.  (*Id.* at 6-7.)  Defendants' Motion to Dismiss was filed on February 3,

2014.  (*See* Mot. Dismiss.)  Plaintiff filed his Response on February 28, 2014 (Doc. No. 18) and

Defendants filed their Reply on March 14, 2014 (Doc. No. 19).  Accordingly, this matter is ripe

for the court's review and recommendation.

## LEGAL STANDARDS

*A.*       **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted).  A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct.

897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.

1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

**B.**     ***Failure to State a Claim upon Which Relief Can Be Granted***[2]

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant

---

[2] Although Defendant's Motion is brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the only asserted Rule 12(b)(1) argument is that Defendants are immune from liability for damages in their official capacities. (Mot. at 3-4.) As discussed *infra*, in footnote 3, the court need not address this argument. Accordingly, the court has not included the Rule 12(b)(1) legal standard herein.

is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 680. Second, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citation omitted).

In making the required determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp*., 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint

may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."). "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

**C.      *Qualified Immunity***

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss. *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988). Once the defense is asserted, the burden shifts to the plaintiff to establish 1) that the defendant's actions violated a federal constitutional or statutory right and 2) that the federal right was clearly established at the time of the challenged conduct. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646. While the plaintiff bears this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true, although the court must consider whether they plausibly give rise to a claim for relief. *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010). The plaintiff first must establish that his allegations, taken in the light most favorable to plaintiff, show that the officer's conduct violated

6

a constitutional right. *Saucier*, 533 U.S. at 201. If the plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id*. This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id*. "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id*. at 236. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id*.

## ANALYSIS

In their Motion to Dismiss, Defendants argue (1) Plaintiff's allegations fail to establish that Defendants personally participated in the alleged violation of Plaintiff's Fourth Amendment rights; (2) Plaintiff fails to state a claim for violations of the Fourth Amendment and, relatedly, Defendants are entitled to qualified immunity; (3) Plaintiff's request for compensatory damages is barred by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*; (4) Plaintiff fails to allege facts demonstrating he is entitled to punitive damages; and (5) Plaintiff cannot

maintain a claim for injunctive relief.[3]  (*See* Mot. Dismiss.)  These arguments are addressed in turn below.

### A.  *Pleading of Defendant Rynek's Identity on Information and Belief*

Defendants maintain that Plaintiff has not sufficiently alleged that Defendant Rynek personally participated in the allegedly unconstitutional group strip search because Plaintiff alleges Defendant Rynek's identity only on information and belief.  (Mot. Dismiss at 7-8; *see also, e.g.,* Am. Compl. ¶¶ 11-12.)  However, this issue is not a matter of personal participation— it is clear that the officer, whether it was Defendant Rynek or someone else, was directly involved in the allegedly unconstitutional strip search.  Instead, it is a question of whether Plaintiff is permitted to allege the identity of Defendant Rynek on information and belief.

Defendants have not cited, nor can the court otherwise locate, any authority suggesting that it is improper as a matter of law for a plaintiff to allege the identity of a defendant upon information and belief.  Otherwise, "[w]hen a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are 'based on secondhand information that [he] believes to be true.'"  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (citation omitted).  The Second Circuit has explained that the "*Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon

---

[3] Defendants also argue that Plaintiff's claims for damages against Defendants in their official capacities are barred by the Eleventh Amendment.  However, the Amended Complaint makes clear that Plaintiff does not seek money damages against Defendants in their official capacities. (Am. Compl. at 8-9.)  Instead, he seeks only injunctive and declaratory relief against Defendants in their official capacities.  (*Id.*)  Accordingly, the court does not address this argument.

information and belief" where the facts are peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation and internal quotation marks omitted).

Under the circumstances, the court finds that Plaintiff is permitted to allege that Defendant Rynek conducted the allegedly unconstitutional group strip search upon information and belief. First, both Plaintiff and another inmate who was present at the strip search have asserted a good-faith belief that Defendant Rynek was the individual who conducted the group strip search. (Am. Compl. ¶ 11-12; Ex. A, ¶ 10; Ex. B, ¶ 9.) Further, it is reasonable to infer that the duration of the strip search was brief; and shortly after the search, Plaintiff was transported away from SCF for a court hearing. Thus, the court finds Defendants are in the best position to either confirm or deny that Defendant Rynek was the individual who performed the strip search. That is a factual matter that cannot be resolved on a Rule 12(b)(6) motion to dismiss. Accordingly, the court rejects Defendants' argument that Plaintiff fails to state a plausible claim for relief against Defendant Rynek simply because Plaintiff has identified Defendant Rynek on information and belief.

**B.   *Personal Participation of Defendants Bilderaya and Falk***

Defendants also argue that Plaintiff's allegations fail to establish that Defendants Bideraya and Falk personally participated in the alleged violation of Plaintiff's Fourth Amendment rights. (Mot. Dismiss at 4-7.) As to these Defendants, the court agrees.

According to Plaintiff's Amended Complaint, Defendants Bilderaya and Falk each acted in a supervisory capacity with respect to the alleged violation of Plaintiff's Fourth Amendment

rights.  (*See* Am. Compl. at 7, ¶¶ 5-6.)  The Tenth Circuit recently clarified the nature of "supervisory liability" under § 1983.  *Schneider v. City of Grand Junction Police,* 717 F.3d 760, 767-770 (10th Cir. 2013).  "Section 1983 does not authorize liability under a theory of *respondeat superior*, *i.e.* vicarious liability."  *Id.* at 767 (citation omitted).  "For this reason, the Supreme Court has suggested the term 'supervisory liability' is 'a misnomer.'"  *Id.* (quoting *Iqbal,* 556 U.S. at 677).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal,* 556 U.S. at 677.

A plaintiff must therefore show an "affirmative link" between the supervisor and the constitutional violation.  *Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2010).  "This requires, for example, more than 'a supervisors mere knowledge of his subordinate's' conduct."  *Schneider,* 717 at 767 (citing *Iqbal* 556 U.S. at 667).  Instead, a plaintiff must show three elements to hold a defendant liable under § 1983 based on his or her supervisory responsibilities: (1) personal involvement, (2) causation, and (3) state of mind.  *Id.*

As to the first prong, "[i]ndividual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation."  *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997).  Before *Iqbal,* the Tenth Circuit "allowed a plaintiff to establish personal involvement in several ways, for example, 'by demonstrating [a defendant's] personal participation, his exercise of control or direction, or his failure to supervise.'"  *Schneider,* 717 F.3d at 768 (quoting *Dodds,* 614 F.3d at 1195).  A supervisor defendant's personal involvement could also be established by "promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights."  *Id.* (citing *Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir. 1988)).

10

*Iqbal,* however, articulated a stricter standard for the personal involvement element of supervisory liability. *Id.* (citing *Dodds,* 614 F.3d at 1199). More specifically, the *Iqbal* Court explained that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." 556 U.S. at 676. However, although the Tenth Circuit has discussed this new standard in several cases, *Schneider,* 717 F.3d at 768 (collecting cases), it has "not yet had occasion to determine what allegations of personal involvement . . . meet *Iqbal's* stricter liability standard," *Dodds,* 614 F.3d at 1199.

Notwithstanding the lack of clarity with respect to supervisory liability after *Iqbal,* the court finds that Plaintiff's allegations fails to establish that Defendant Bilderaya and Falk were personally involved in the alleged violation of his constitutional rights. First, Plaintiff alleges that both Defendant Bilderaya and Defendant Falk "consented to" and were "aware" that mass strip searches—in general, not in this particular instance—were being conducted at SCF. (Am. Compl. ¶¶ 5-6.) The court need not accept Plaintiff's label that Defendants Bilderaya and Falk "consented to" strip searches at SCF in general—particularly where Plaintiff does not allege any facts to support this conclusion. Further, *Iqbal* clearly forecloses liability based on the fact that Defendants Bilderaya and Falk were "aware" that mass strip searches were being conducted, even assuming that allegation is true. 556 U.S. at 677 (a "supervisor's mere knowledge of his subordinate's" unconstitutional conduct is insufficient to establish a § 1983 claim).

Second, Plaintiff appears to allege that Defendant Bilderaya failed to properly train his subordinates in the SCF Receiving Unit regarding the proper methods for conducting strip searches. (Am. Compl. at 7, ¶ 5.) However, even prior to *Iqbal,* § 1983 liability for a failure to

11

train arises only "where there is essentially a complete failure to train, or training is so reckless or grossly negligent that future misconduct is almost inevitable." *Meade v. Grubbs,* 841 F.2d at 1528 *called into doubt by Schneider,* 717 F.3d at 768.  Here, Plaintiff's Amended Complaint does not outline any specific deficiencies in the training provided to the SCF Receiving Unit, much less how those deficiencies rendered the alleged violation of his Fourth Amendment rights inevitable.  (*See* Am. Compl. at 7, ¶ 5.)

Accordingly, the court finds that Plaintiff has failed to demonstrate that Defendants Bilderaya and Falk were personally involved in the alleged violation of his constitutional rights. As such, Defendants Bilderaya and Falk are properly dismissed as Defendants.

## C.    *Qualified Immunity*

Defendants argue that Plaintiff's allegations fail to establish a violation of his constitutional rights and that, even if he has, Defendant Rynek is entitled to qualified immunity. (Mot. Dismiss at 8-10, 13-14.)  The court disagrees.

Although an inmate's right to privacy "must yield to the penal institution's need to maintain security, it does not vanish altogether." *Cumbey v. Meachum,* 684 F.2d 712,714 (10th Cir. 1982).  Further, it is a "well established premise [] that 'a strip search is an invasion of personal rights of the first magnitude.'" *Farmer v. Perrill,* 288 F.3d 1254, 1259 (10th Cir. 2002) (quoting *Chapman v. Nichols,* 989 F.2d 393, 395 (10th Cir. 1993)).  A determination as to "the constitutionality of a strip search 'requires balancing of the need for the particular search against the invasion of personal rights that the search entails.  Court must consider the scope of the particular intrusion, *the manner in which it is conducted, and the place in which it is conducted.*'" *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 559 (1979)) (emphasis in original).

Ultimately, there is a well-established right "not to be subjected to a humiliating strip search in full view of several (or perhaps many) others *unless the procedure is reasonably related to a legitimate penological interest. Id.* (emphasis in original).

For purposes of a motion to dismiss, the court need only assess, as a general matter, whether the conduct at issue was reasonably related to a legitimate penological interest. *Al-Owhali v. Holder,* 687 F.3d 1236, 1240 (10th Cir. 2012). It is not necessary for the plaintiff to identify every potential legitimate interest and plead against it. *Id.*

The court finds that Plaintiff has stated a plausible claim that he was subjected to a group strip search that was not supported by a legitimate penological interest. The court assumes, without necessarily deciding that Defendants had a legitimate penological interest in conducting strip searches of inmates leaving the facility for court appearances. However, the more precise question is whether there was a legitimate penological interest to support a strip search of ten inmates in the same room at the same time. Indeed, if there were alternatives to the strip search procedure allegedly employed by Defendant Rynek—for example, conducting individualized strip searches in a private setting—and those alternatives could have fully accommodated Plaintiff's  rights at a *de minimus* cost to valid penological interests, then the procedure may have constituted an "exaggerated response" to security needs. *Turner v. Safley,* 482 U.S. 78, 90 (1987). Further, although it may not rise to the level of a full body cavity search, *see Jackson v. Cent. N.M. Corr. Facility,* 976 F.2d 740, 1992 WL 236921, at *3 n.3 (Sept. 21, 1992), the strip search allegedly conducted on Plaintiff and others was still a significant intrusion, *Farmer,* 288 F.3d at 1259.

13

Further, the court cannot conclude from Plaintiff's allegations alone that the strip search of Plaintiff alongside other inmates was reasonably related to legitimate penological concerns. Most, if not all, the cases cited by Defendants that have found group strip search procedures to be constitutional were decided on summary judgment and, thus, the circumstances giving rise to, and the justifications for, the search procedures were developed in the record.  *See, e.g., Fernandez v. Rapone*, 926 F. Supp. 255, 261-62 (D. Mass 1996) (summary judgment granted on Fourth Amendment claim regarding strip searches following contact visits because the searches were performed by male officers, outside the view of visitors, and were conducted, out of necessity, in available areas near the contact visit site); *Zunker v. Bertrand,* 798 F. Supp. 1365, 1369-70 (E.D. Wisc. 1992) (granting summary judgment based on the defendant's testimony that strip searches could not be conducted behind privacy curtains because the curtains would impede an officer's view of the inmate being searched and thereby allow inmates to hide contraband); *Elliot v. Lynn,* 38 F.3d 188 (affirming district court's grant of summary judgment where emergency circumstances required an immediate search of inmate, in the most time-efficient place and manner available, to seize weapons of violence and other contraband); *Thompson v. Souza*, 111 F.3d 694 (9th Cir. 1997) (affirming grant of summary judgment where strip searches in private would potentially allow prisoners to discard contraband on the way to a separate area).[4]  In contrast, here, the court is limited to the facts alleged by Plaintiff, which establish only that the group strip search occurred prior to Plaintiff being transported to court.

---

[4] *See also Franklin v. Lockhart,* 883 F.2d 654, (8th Cir. 1989) (affirming district court's conclusion, after an evidentiary hearing, that security concerns prevented strip searches from being conducted in private*); Arruda v. Fair,* 547 F. Supp. 1324 (D. Mass. 1982) (granting

Ultimately, the court finds that Plaintiff has stated a plausible claim that being subjected to a strip search in front of approximately nine other inmates violated his Fourth Amendment rights.  Further, this right was clearly established at the time the search was conducted.  *Farmer v. Perill,* 288 F.3d 1254, 1260 (10th Cir. 2002) (right to be free from a strip search in full view of others was clearly established well before May 1993).  Accordingly, the court finds that Plaintiff has alleged sufficient facts to state a claim for relief and overcome Defendant Rynek's assertion of qualified immunity.

### D.    *Compensatory Damages*

Defendants argue that Plaintiff's request for compensatory damages must be dismissed because Plaintiff fails to allege a physical injury as a result of the allegedly unconstitutional strip search.  (Mot. Dismiss at 10.)  The court disagrees.

The PLRA states:  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.  42 U.S.C. § 1997e(e) (emphasis added).  *See also Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 807 (10th Cir. 1999).  However, Plaintiff explicitly states in his Amended Complaint that he does not seek damages for mental or psychological anguish.  (Am. Compl. at 8, ¶ 4.)  The PLRA does not apply where the plaintiff does not request damages for mental or emotional injury.  *See Hawkinson v. Montoya*, 479

---

judgment in favor of defendants after a bench trial); *Noreiga v. Cummings,* No. 95-3292-JTM, 1998 WL 289055, at *1 (D. Kan. May 7, 1998) (granting summary judgment on Fourth Amendment claim relating to strip searches while being moved to and from the prison yard); *Jackson,* 1992 WL 236921, at *1 (affirming district court where, despite considering both a Rule 12(b)(6) motion and a cross motion for summary judgment, the court effectively granted summary judgment  under Fed. R. Civ. P. 56).

F.Supp.2d 1164, 1169 (D. Colo. 2007) (rejecting interpretation of the statute as prohibiting a prisoner from recovering compensatory damages *of any type* unless he has suffered a physical injury).  Thus, Defendants' Motion to Dismiss is properly denied to the extent it seeks to dismiss Plaintiff's request for compensatory damages pursuant to the PLRA.[5]

**E.       *Punitive Damages***

Defendants argue that the court should dismiss Plaintiff's request for punitive damages because Plaintiff has failed to allege that Defendant Rynek acted with the requisite mind state. (Mot. Dismiss at 10-11.)  The court disagrees.

Punitive damages are available in a § 1983 action when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others.  *Smith v. Wade,* 461 U.S. 30, 56 (1983).  *See also Soderbeck v. Burnett Cnty.,* 752 F.2d 285, 291 (7th Cir. 1985) (stating that "punitive damages . . . are reserved for cases where the wrongfulness of the defendant's conduct is conspicuous, implying that its wrongfulness is apparent to the person who engages in it, and not just to a lawyer.").

Consistent with the court's discussion of the merits of Plaintiff's Fourth Amendment claim, the court finds that Plaintiff has sufficiently stated a claim for punitive damages. Assuming the truth of Plaintiff's allegations, if Defendant Rynek cannot justify his alleged

_____

[5] In reaching this conclusion, the court acknowledges that Plaintiff likely cannot recover more than nominal damages on his request for compensatory damages "for the cost of and being forced to fore go [sic] the protections of the Fourth Amendment."  (Am. Compl. at 8, ¶ 4.) Nevertheless, as a technical matter, the court cannot dismiss requests for compensatory damages of any type under the PLRA; instead the PLRA only forecloses damages for mental or emotional injury.

decision to conduct a group strip search, as opposed to conducting individual searches in a more private setting, then a reasonable jury could find that his actions were motivated by an evil intent. This is particularly true because, absent an emergency, CDOC Administrative Regulations (AR) bans the use of strip searches of more than one inmate without a privacy screen or barrier.  (Mot. Dismiss, Ex. A-1, AR 300-06(VI)(D)(4)(b).)  If Plaintiff can establish that Defendant Rybek maliciously disregarded CDOC regulations *and* his actions also violated the Fourth Amendment, Plaintiff may be entitled to punitive damages.

## F.      *Injunctive Relief*

In his Amended Complaint, Plaintiff seeks to enjoin Defendants from strip searching him in front of other inmates when being transported.  (Am. Compl. at 8.)  Defendants argue that this request for injunctive relief should be dismissed.  (Mot. Dismiss at 11-13.)  The court agrees.

"While a plaintiff who has been constitutionally injured can bring a § 1983 action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future."  *Facio v. Jones,* 929 F.2d 541, 544 (10th Cir. 1991); *see also Barney v. Pulsipher,* 143 F.3d 1299, 1306 (10th Cir. 1998).  Plaintiff makes only conclusory allegations without factual support that there has been a pattern of group strip searches at SCF.  (Am. Compl. at 7, ¶¶ 5-6.)  Indeed, Plaintiff's Amended Complaint does not refer to any other specific incident(s) in which similar group strip searches have been conducted at SCF.  Further, as discussed, AR 600-05 prohibits mass strip searches in front of other inmates except in emergency situations.  As a consequence, Plaintiff has failed to establish more than a speculative possibility that he will be subject to the same allegedly unconstitutional conduct in the future.

17

Moreover, Plaintiff's request for injunctive relief is overbroad. Plaintiff seeks a blanket ban on Defendants strip searching him in front of other inmates. (Am. Compl. at 8.) However, a non-private group strip search is permissible under the Fourth Amendment so long as it is supported by a legitimate penological purpose. *Farmer,* 288 F.3d at 1260. Thus, if permitted, Plaintiff's request for injunctive relief would impermissibly bar Defendants from engaging in both legitimate and illegitimate conduct. Accordingly, the court finds that Plaintiff's request for injunctive relief is properly dismissed.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendants' "Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (Doc. No. 16) be GRANTED in part and DENIED in part. Specifically, the court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED to the extent that it seeks to dismiss (1) Plaintiff's claims against Defendants Bilderaya and Falk and (2) Plaintiff's request for injunctive relief and DENIED in all other respects.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 26th day of August, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

19