**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-3086-WJM-KMT

ANTHONY D. SHAPIRO,

    Plaintiff,

v.

MARCUS RYNEK, in his individual capacity, and
STEVEN DOANE, in his individual capacity,

    Defendants.

## ORDER DENYING MOTION TO DISQUALIFY

Before the Court is Plaintiff's Motion to Disqualify Defendants' Counsel Pursuant to Colorado Rules of Professional Conduct Rule 1.7 ("Motion to Disqualify"). (ECF No. 138.) For the reasons explained below, this Motion is denied.

### I. BACKGROUND

As summarized in this Court's Order Denying Defendants' Motion for Summary Judgment ("Summary Judgment Order"), this case involves an accusation that Plaintiff Anthony Shapiro ("Shapiro"), a Colorado Department of Corrections ("CDOC") inmate housed at the Sterling Correctional Facility ("Sterling"), was unconstitutionally strip searched before being placed on a transport bus on December 6, 2012. (ECF No. 131 at 3–4.) Specifically, Shapiro claims that he was strip searched in front of other inmates, rather than privately. (*See id*.)

As the Court stated in the Summary Judgment Order, "The parties agree that the strip search was ordered and performed by one male prison guard acting alone.

Whether that guard was [Defendant] Rynek or [Defendant] Doane (or someone else) is somewhat uncertain . . . ." (*Id*. at 4.)  Rynek was a CDOC officer assigned to Sterling, while Doane was a CDOC officer assigned to the Northern Transport Unit ("NTU"), a special CDOC division charged with transporting prisoners in a certain geographic region.  (*Id*. at 11–12.)

At one point in this litigation, Shapiro positively identified Rynek as the guard who performed the strip search.  (*Id*. at 10.)  Apparently Shapiro has since backpedaled from his previous certainty (*see* ECF No. 144 at 3), and his counsel is prepared to pursue an argument that the strip search may have been performed by Doane (ECF No. 131 at 11).

> This argument runs as follows:
>
> 1. Rynek denies conducting the strip search and asserts that any strip search performed would have been done by the NTU officers in charge of driving the offenders to Denver.  The three NTU officers present that day, including Doane, also testified that NTU officers are responsible for strip searching inmates prior to transport.  And Sterling's warden similarly testified that NTU conducts the pre-transport strip searches.
>
> 2. The officer in question "was white" and had "a medium to muscular build."  Allegedly, Doane was the only white NTU officer present on the morning in question, and has "a medium to muscular physique."
>
> 3. Therefore, Doane might be the officer responsible.

(*Id*. (citations omitted).)

This state of affairs led the Court to express some concern regarding Rynek's and Doane's joint representation by the Colorado Attorney General's Office, given

2

Rynek's and Doane's apparent motive to point fingers at each other. (*Id*. at 13–14.) Specifically, Rynek had a motive to accuse the NTU, and the only NTU officer still a defendant in this case is Doane; while Doane had a motive to highlight Shapiro's positive identification of Rynek. (*Id*.) Representation by the same attorneys would make such arguments difficult.

Despite this, the Court acknowledged that it "does not have a comprehensive view of the evidence and arguments to be presented at trial. Therefore the Court cannot say with certainty that a non-waivable conflict of interest exists here." (*Id*. at 14.) The Court nonetheless "strongly encourage[d] Defendants' counsel to seek an outside opinion on this matter at their earliest possible opportunity." (*Id*.)

The Court issued its Summary Judgment Order on September 16, 2016. On December 9, 2016, Defendants' counsel filed a "notice" informing the Court that they had obtained an opinion from the attorneys in the Attorney General's Office that regularly review cases for conflicts of interest, and those attorneys saw no conflict in continuing joint representation of Defendants. (*See generally* ECF No. 135.) This is so primarily because Doane, although he has no specific memory of searching Shapiro, nonetheless *agrees* with Rynek that any strip search which occurred was performed by NTU officers such as himself, albeit in private. (*Id*. at 4–5.) In other words, Rynek's position is that he was not involved at all, whereas Doane's position is that he may have been involved but no *public* strip search occurred.

Not satisfied with this explanation, Shapiro filed the Motion to Disqualify at issue here on December 26, 2016. (ECF No. 138.) This matter is set for a Final Trial

Preparation Conference on February 3, 2017, and a jury trial scheduled to begin on February 21, 2017.  (ECF No. 126.)

## II.  LEGAL STANDARD

"A motion to disqualify counsel is addressed to the sound discretion of the district court."  *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F. Supp. 1297, 1301 (D. Colo. 1994).  The moving party bears "the burden to establish the grounds for disqualification."  *Id*. at 1299.  With exceptions not relevant here, the District of Colorado has adopted the Colorado Rules of Professional Conduct ("Colo. RPC") to govern attorney conduct in this District.  *See* D.C.COLO.LAttyR 2(a).

## III.  ANALYSIS

### A.    Summary of Shapiro's Argument

Shapiro's Motion to Disqualify is largely based on the rule that a lawyer shall not represent a client if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client."  Colo. RPC 1.7(a)(2).  Shapiro argues that, "in light of the evidence that a group strip search did happen, there is a significant risk that the Defendants' interests will diverge—that is, that they will feel the need to litigate the identity of the officer responsible for the search," and thereby point fingers at each other.  (ECF No. 138 at 10–11.)

> If, for example, Defendants' counsel puts Mr. Rynek on the stand knowing that he will testify that NTU categorically conducts the strip searches for outgoing prisoners, they also know that they are introducing evidence that benefits Mr. Rynek at Mr. Doane's expense, violating counsel's obligations under Rule 1.7(a)(2).  But if Defendants' counsel fails to introduce such evidence, that failure limits the strength of Defendant Rynek's defense, also violating

4

> counsel's obligations under Rule 1.7(a)(2). If Defendants'
> counsel argue that Mr. Shapiro's identification of Mr. Rynek
> as the person who ordered the strip search weakens the
> case against Mr. Doane, such a position would benefit
> Defendant Doane at Defendant Rynek's expense, yet again
> violating Rule 1.7(a)(2). Whichever tactic Defendants'
> counsel adopt, they are highly likely to be harming one client
> for the benefit of another, or denying both clients the benefit
> of a robust defense.

(*Id*. at 11–12.)

**B.     Standing**

Defendants argue that Shapiro lacks standing to seek disqualification based on this alleged conflict. (ECF No. 144 at 6–7.) The issue of standing in these circumstances is somewhat hazy given a particular amendment to the Colorado Rules of Professional Conduct.

The Colorado Supreme Court adopted most of the ABA Model Rules of Professional Conduct in 1992 (effective January 1, 1993), thus creating the Colorado Rules of Professional Conduct. At that time, Rule 1.7 contained comment [15], which counseled that "opposing counsel may properly raise the question" of his or her opponent's conflict of interest only "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice." *See* http://www.americanbar.org/groups/professional_responsibility/policy/ethics_2000_commission/e2k_redline.html (last accessed Jan. 10, 2017); *see also Abbott v. Kidder Peabody & Co.*, 42 F. Supp. 2d 1046, 1050 (D. Colo. 1999) (quoting this portion of the former rule). In other words, the conflict of interest needed to be particularly egregious before an opposing party had standing to move to disqualify.

However, in 2001 and 2002, the ABA's "Ethics 2000" commission proposed revisions to the Model Rules, and specifically proposed "delet[ing] [Rule 1.7's] Comment [15] . . . because it addresses questions outside the disciplinary context." American Bar Association, Model Rule 1.7: Reporter's Explanation of Changes, *available at* http://www.americanbar.org/groups/professional_responsibility/policy/ethics_2000_commission/e2k_rule17rem.html (last accessed Jan. 10, 2017). The Colorado Supreme Court adopted this change wholesale in 2007, effective January 1, 2008. *See* Rule Change 2007(7) at 34–45, 165–66 (Colo. Apr. 12, 2007), *available at* https://www.courts.state.co.us/userfiles/File/Court_Probation/Supreme_Court/Rule_Changes/2007/07_07.pdf (last accessed Jan. 10, 2017). This Court has been unable to locate any commentary on this particular change in Colorado.

Although former comment [15] is no longer a part of the Colorado Rules of Professional Responsibility, and therefore no longer a part of the rules of attorney conduct in this Court, it was not deleted for substantive reasons. Rather, the ABA (and, presumably, the Colorado Supreme Court) simply concluded that questions of standing are outside the scope of rules governing professional discipline. In this light, the Court believes that the principles underlying former comment [15] should still apply. Thus, courts should generally refuse to entertain a motion to disqualify based a conflict of interest where the motion is brought by an opposing party. However, the opposing party may have standing if it raises a conflict that, if left unaddressed, would clearly call into question the fair or efficient administration of justice. The Court views this as akin to the final prong of the plain error test, which requires an error that "would seriously affect the fairness, integrity, or public reputation of judicial proceedings" if not corrected.

*United States v. Trujillo-Terrazas*, 405 F.3d 814, 818 (10th Cir. 2005); *cf. Abbott*, 42 F. Supp. 2d at 1050 (applying former comment [15] and permitting a defendant to move to disqualify the plaintiffs' counsel in light of "a clear public policy issue regarding the ability of the Plaintiffs' attorneys to provide individual counsel to [over 200] individual plaintiffs [in a non-class action lawsuit]").

Shapiro presents no argument that meets this standard. Shapiro argues that the alleged conflict has materially limited the discovery process because Defendants' counsel

> have a disincentive to investigate the claims at issue in the case, as any information that exculpates one defendant might inculpate the other . . . . Independent counsel for Defendant Rynek and Defendant Doane would have entirely different interests in the truth-seeking process of this litigation and may well have pursued different strategies, more clearly illuminating the facts at issue and leading to a more just outcome.

(ECF No. 138 at 9; *see also id*. at 11 ("There is no incentive for Defendants or their counsel to zealously develop the evidentiary record, as the search for truth in this case will harm one defendant to the benefit of the other.").) Shapiro extends this argument to the trial process, claiming that "Defendants' counsel's conflict of interest materially limits evidence [that will be introduced] in this case." (*Id*. at 12.) For reasons discussed in Part III.C, below, these arguments rely on an inaccurate view of the facts of this case, and there is no support for the idea that the evidence will be materially limited at trial (nothing prevents Shapiro from bringing out any evidence that Defendants withhold). But even at a more abstract level, Shapiro's argument rests on the notion that a plaintiff's own discovery and trial efforts will be inadequate to uncover the truth, and so

7

it would be helpful to have defendants whom the plaintiff could play off of each other. The Court sees no issue here that clearly calls into question the fair and efficient administration of justice.

Accordingly, the Court finds that Shapiro lacks standing to challenge Defendants' counsel's conflict of interest.

**C.     Merits**

Even if Shapiro had standing to move to disqualify Defendants' counsel, his argument fails on the merits. Rynek intends to testify that he was not involved in the alleged strip search, does not know who conducted the search, and that any strip search on the day in question would have been performed by NTU officers—thus implicitly accusing Doane. (ECF No. 140 at 1–2; ECF No. 144 at 9.) If Doane *disagreed* that NTU officers would have performed any strip search, then Doane's and Rynek's interests would potentially be in conflict such that their joint representation would be impermissible under Rule 1.7. However, Doane agrees with Rynek and plans to testify that "one of the three transport officers [inclusive of himself] . . . would have certainly searched Plaintiff prior to transport" but any such search "would have been conducted individually and in private." (*Id*. (internal quotation marks omitted; emphasis removed).)[1]

Shapiro envisions a scenario in which Rynek and Doane are represented by separate counsel, who each pursue a strategy of attempting to lay blame on the other's

---

[1] As part of proceedings regarding this Motion to Disqualify, the Court required Defendants' counsel to obtain a declaration from Doane confirming that this is his story. (ECF No. 140 at 2.) Doane submitted just such a declaration. (ECF No. 144-4.)

client.  There are cases in which such a strategy would be appropriate, but failure to pursue such a strategy in this case is not a manifestation of the conflict of interest.  If Rynek does not know who conducted the strip search or how it was conducted, it is not his attorney's professional duty to pursue a strategy implicating Doane.  In this case, as it turns out, Rynek's testimony does implicate Doane indirectly, but if the case were otherwise, hypothetical separate counsel for Rynek would have violated no ethical duty by choosing to stand on the defense that Rynek simply was not present at the alleged strip search.

Similarly, if Doane believes that someone other than Rynek performed the strip search, it is not his hypothetical separate attorney's duty to pursue a strategy implicating Rynek simply because it would be to Doane's advantage to aim the spotlight at Rynek.  To the contrary, the attorney would likely violate various Rules of Professional Conduct if he or she attempted to present an exculpatory scenario contrary to his or her own client's story.  *See, e.g.*,  Colo. RPC 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ."); Colo. RPC 3.4 ("A lawyer shall not * * * counsel or assist a witness to testify falsely * * * [or] in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence . . . .").

In the Summary Judgment Order, the Court expressed concern about Doane potentially using Shapiro's identification of Rynek to deflect attention from himself and inculpate Rynek.  (ECF No. 131 at 14.)  Defendants now clarify that they plan to use Shapiro's identification *and* later apparent retraction of that identification as "prior

inconsistent statements to the mutual benefit of both Defendants." (ECF No. 135 at 5.) In other words, as the Court understands it, Defendants plan to use this information in Shapiro's cross-examination, not in Doane's direct examination. With this understanding, the Court's previous concerns have been sufficiently addressed.

Shapiro also points to a "Incident Report" that Rynek authored on January 17, 2013, apparently in response to an inmate's grievance regarding the alleged strip search. (ECF No. 138 at 8; ECF No. 138-14.)[2] In that report, Rynek recorded what another Sterling official said to him: "Lt. Weeder stated to me that NTU Transport staff are the [ones] who conducted strip search[es] that way." (*Id*. at 2.) The Court will not, in this context, address whether this statement is admissible for the truth of what Lt. Weeder reportedly said. Assuming it is admissible for that purpose, it creates no conflict of interest. It still sets up the same basic scenario already present: Rynek believes that NTU officers performed whatever strip search took place, and Doane denies that claim only to the extent Shapiro asserts that the strip search was in public. Lt. Weeder's statement to Rynek may be evidence against Doane as to the latter point, but it is not an accusation *by* Rynek that Doane performed a public strip search.

The Court therefore declines to disqualify Defendants' counsel.

## IV. ATTORNEYS' FEES

Defendants argue that they deserve their attorneys' fees incurred in responding to Shapiro's Motion to Disqualify. (ECF No. 144 at 17.) Although the Court has found that the Motion lacks merit, and the Court is concerned about its timing (given the

---

[2] It is not clear whether Shapiro filed this grievance, nor whether the grievance was filed against Rynek.

proximity to trial), the Court in its discretion finds that fee-shifting is not warranted. Shapiro's arguments are misdirected, but the Court does not view them as frivolous, vexatious, or harassing. Defendants' request is therefore denied.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Shapiro's Motion to Disqualify (ECF No. 138) is DENIED;

2. This matter REMAINS SET for a Final Trial Preparation Conference on February 3, 2017 at 4:00 p.m., and a 4-Day Jury Trial beginning on Tuesday, February 21, 2017, both in Courtroom A801; and

3. Counsel are directed to the undersigned's Revised Practice Standards (revised effective December 1, 2016) to ensure compliance with all deadlines triggered by the dates of the Final Trial Preparation Conference and Trial.

Dated this 11th day of January, 2017.

BY THE COURT:

William J. Martinez
United States District Judge